**IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

---

**NATIONAL TRUST INSURANCE CO.,**

      **Plaintiff,**

**v.**                                      **No.:**  _____

**A-Z LIGHTNING PROTECTION, LLC, AND
CHIEF ELECTRIC COMPANY**

      **Defendants.**

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Plaintiff, National Trust Insurance Company ("National Trust"), by and through counsel and pursuant to 28 U.S.C. § 2201, respectfully files this Complaint for Declaratory Judgment and would show the Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff brings this action pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment.  Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1332.

2.      Plaintiff, National Trust is an Indiana corporation formed under Indiana law with a principal address of 9025 River Rd., Suite 300, Indianapolis, Indiana 46240-6443.  Upon information and belief, National Trust is duly qualified to do business in Tennessee may be served with process through its registered agent, Insurance Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Pkwy, Nashville, Tennessee 37243-1204.

3.      Defendant, A-Z Lightning Protection, Inc. ("A-Z Lightning") is a Mississippi limited liability company formed under Mississippi law with a principal address of 120 Landen

Cir, Byhalia, Mississippi 38611-6206.  Upon information and belief, A-Z Lightning is duly qualified to do business in Tennessee and may be served with process through its registered agent, Gregory A. Pohlman, 5100 Poplar Ave., Suite 617, Memphis, Tennessee 38137-0617.

4.     Defendant, Chief Electric Company ("Chief Electric") is a Tennessee corporation with its principle place of business located at 1435 National Street, Memphis, Tennessee 38122. Chief Electric is engaged in the business of installing electrical components and systems on commercial construction projects.

5.      This Court has jurisdiction over the parties herein and is the appropriate venue for this cause of action because a substantial part of the events giving rise to the claim occurred in Millington, Tennessee and the amount in controversy exceeds $75,000.00.

6.     National Trust brings this action for a declaratory judgment seeking a declaration that there is no coverage for Defendants A-Z Lightning or Chief Electric related to the subject claim by general contractor Accel/Pacific JV or Chief Electric, concerning damage to the roofing system installed on the Marine Corps Reserve Boat Maintenance and Storage Facility, or related to the pending lawsuit of Chief Electric Company v. A-Z Lightning Protection, LLC and Accell/Pacific JV, *et al*., in the Chancery Court of Shelby County, Docket No. CH-16-1008, Part I filed June 16, 2016.

## FACTS

7.     National Trust issued a policy of insurance, Policy No. CPP0020676-01 ("the Policy") to A-Z Lightning.  This policy has an inception date of July 01, 2015 and an expiration date of July 01, 2016.  This policy was in full force and effect on April 14, 2016, and at all times pertinent to this action.  A copy of the Policy between National Trust and A-Z Lightning is attached hereto as Exhibit A.

8.      The Policy specifically provided commercial general liability coverages for "bodily injury" and "property damage" to A-Z Lightning subject to certain terms, conditions and exclusions, endorsements, and endorsement exclusions.

9.      Upon information and belief, Accel/Pacific JV entered into a contract, as the General Contractor, with the U.S. Department of the Navy to provide certain construction services and improvements to a boat maintenance facility located at Naval Support Activity Midsouth in Millington, Tennessee.  The project is known as P-031 Marine Corps Reserve Boat Maintenance and Storage Facility (hereinafter "Project").  Chief Electric entered into a subcontract with Accel/Pacific JV to perform a portion of the work for the Project pertaining to the electrical scope of work which included the installation of a lightning protection system.

10.     Chief Electric then entered into a contract/purchase order (hereinafter "Contract") with A-Z Lightning for the installation of the lightning protection system for the Project.  A copy of the Contract between Chief Electric and A-Z Lightning is attached hereto as Exhibit B.

11.     On or about April 8, 2016, A-Z Lightning began to install the lightning protection system referenced in the Contract.

12.     Chief Electric and/or Accel/Pacific JV allege the manner of installation and some of the components used by A-Z Lightning were improper, not specified or approved for use on the Project, and/or otherwise incompatible for the specific standing seam metal roof utilized on the Project.

13.     More specifically, A-Z Lightning's employee and/or agent(s) allegedly utilized air terminal bases (hereinafter "clamps") on the standing seams of the metal roofing system that were either not specified for use on the roof on which they were installed, or were otherwise improperly installed by an employee of A-Z Lightning in such a manner that resulted in

"crimping or crushing" of the standing seams at the locations where the air terminal bases were installed.

14.     Upon information and belief, the allegedly improper installment of the clamps on the seams and subsequent "crimping" of the metal roof was discovered before the A-Z Lightning employee and/or agent completed installing all the clamps.

15.     Upon information and belief, the Project supervisor was notified within approximately a half hour after the installation commenced and subsequently halted installation by A-Z Lightning while an investigation ensued.

16.     A significant portion of the installation of the lightning protection system on the roof as agreed in the Contract remained unfinished.

17.     As a result of the improper installation of the clamps on the standing seams of the metal roof system for the Project, the roof was damaged.

18.      A representative of the building manufacturer examined the roof and determined that the damage to the roof caused by the improper installation of the clamps by an employee and/or agent(s) of A-Z Lightning was irreparable, that the integrity of the roof system was compromised, and the damage would void the warranty issued by the manufacturer of the roof.

19.     Upon information and belief, the only viable solution to repair the damage caused by the employees and/or agent(s) of A-Z Lightning was for the entire roof system to be replaced.

20.     On or about May 2, 2016, Chief Electric received a letter from Accel/Pacific JV placing Chief Electric on formal notice regarding the noncompliant installation of the lightning protection system.

21.     On or about May 4, 2016, Chief Electric, through its counsel, transmitted formal notice to A-Z Lightning of its claim against A-Z Lightning arising out of the improper installation of the lightning protection system.

22.     The damaged standing seam metal roof system on the Project was replaced by Accel/Pacific JV, and upon replacement of the roof, A-Z Lightning returned to the Project and correctly installed the required components for the lightning protection system.

23.     After completion and acceptance of the replacement roof by the U.S. Department of the Navy, Accel/Pacific JV transmitted a letter on or about June 6, 2016, advising Chief Electric that the replacement roof had been completed on May 26, 2016, that the building was accepted by the U.S. Department of the Navy on May 27, 2016.  Accel/Pacific JV further advised Chief Electric that it was being backcharged the sum of $181,780.00 for costs, expenses, and damages resulting from the improper installation of the lightning protection system by A-Z Lightning.

24.     Demand was made upon A-Z Lightning to reimburse Chief Electric for all damages suffered by Chief Electric as a result of the original improper installation of the lightning protection system.

25.     Upon information and belief, A-Z Lightning has not paid Chief Electric any amounts necessary to reimburse Chief Electric for its damages resulting from allegedly improper installation of the lighting protection system and resulting replacement roof.

26.     On June 16, 2016, unable to reach a compromise as to reimbursement, Chief Electric filed suit against A-Z Lightning in the Shelby County Chancery Court, CH-16-1008, Part I, seeking contractual indemnity in the amount of $181,700.00, plus interest, attorney's fees,

and costs to be assessed against A-Z Lightning.  A copy of Chief Electric's Amended Complaint filed against A-Z Lightning is attached hereto as Exhibit C ("Complaint").

27.     In this Complaint, Chief Electric alleges only two counts of liability: 1) breach of contract, and 2) contractual and common law indemnity.  Both counts are rooted solely on contractual liability.

28.     As to its breach of contract claim, Chief Electric alleges that the initial installation of the lightning protection system breached the Contract because it did not conform to the plans and specifications set forth in the Contract or industry standard applicable to the Project, and the roof was damaged as a result of this improper installation.  (Complaint at ¶¶ 16-29).

29.     As to its indemnity claims, Chief Electric contends that under the Contract, A-Z Lightning has "a contractual obligation to indemnify Chief Electric from any and all losses, expenses, claims, and damages resulting from the improper installation of the lightning protection system."  (Complaint at ¶ 32).

30.     National Trust contends that it has no duty to provide liability coverage to A-Z Lightning or to Chief Electric, nor does it have a duty to provide a defense to the underlying lawsuit referenced in Paragraph 26.  (See Letter from FCCI Insurance Group Denying Coverage dated June 23, 2016 ("Exhibit D")).

## COUNT I – REQUEST FOR DECLARATORY JUDGMENT

31.     National Trust would incorporate the allegations contained in Paragraphs 1 through 30 as if recited verbatim herein.

32.     Based upon the factual allegations contained in the underlying Complaint and the language contained in the Policy, National Trust contends and asserts that neither A-Z Lightning nor Chief Electric is entitled to coverage under the Policy.

33.     "Whether a duty to defend arises depends solely on the allegations contained in the underlying complaint.  Travelers Indem. Co. of Am. v. Moore & Assocs., 216 S.W.3d 302, 305 (Tenn. 2007) (quoting St. Paul Fire & Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994)).

34.     Generally speaking, commercial general liability policies ('CGLs"), like the one at issue have been used since the 1940s and were designed to protect an insured against certain losses arising out of business operations.  Travelers Indem. Co. of Am., 216 S.W.3d at 305 (citing Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc., 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998)).

35.     "CGLs are divided into several components, including the 'insuring agreement,' which 'sets the outer limits of an insurer's contractual liability,' and the 'exclusions,' which 'help define the shape and scope of coverage' by excluding certain forms of coverage.  Travelers Indem. Co. of Am., 216 S.W.3d at 305 (quoting Chester-O'Donley, 972 S.W.2d at 7).

36.     National Trust submits five alternative bases in which coverage should be denied; any one of which is sufficient to preclude coverage.

## A. DENIAL OF PROPERTY DAMAGE COVERAGE BASED ON LACK OF OCCURRENCE

37.     National Trust would incorporate the allegations contained in Paragraphs 1 through 36 as if recited verbatim herein.

38.    National Trust contends that under the insuring agreement, the services rendered by A-Z Lightning which are the subject of the underlying lawsuit referenced in Paragraph 26 do not constitute an "occurrence" under the policy such that coverage applies.

39.    The Policy explains that insurance coverage only applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" during the policy period.  The Policy states in relevant part as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1) The amount we will pay for damages is limited as described in Section Ill –Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3)   Prior to the policy period, no insured listed under Paragraph 1. of Section II –Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

40.     Section V (17) of the Policy defines 'Property damage' as the "[p]hysical injury to tangible property, including all resulting loss of use of that property."  See also Travelers Indem. Co. of Am., 216 S.W.3d at 305.  "All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or [l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

41.     Section V (13) of the Policy defines an 'occurrence' is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Travelers Indem. Co. of Am., 216 S.W.3d at 305; see also Std. Constr. Co. v. Md. Cas. Co., 359 F.3d 846, 851 (6th Cir. Tenn. 2004) (quoting Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503 (6th Cir. 2003)); Moulton v. Auto-Owners Ins., No. 3:11-CV-121, 2013 U.S. Dist. LEXIS 13942, at *5-6 (E.D. Tenn. Feb. 1, 2013).

42.     Tennessee courts have routinely held in the context of CGLs that the term "accident" means "an unforeseen or unexpected event."  Travelers Indem. Co. of Am., 216 S.W.3d at 308; Gassaway v. Travelers Ins. Co., 439 S.W.2d 605, 607-08 (Tenn. 1969) ("[W]hen used in a liability insurance policy the word "accident" refers to "an event not reasonably to be foreseen, unexpected and fortuitous.") (also holding that the word "accident" included the "negligent acts of the insured causing damage which is undesigned and unexpected."); see also

Black's Law Dictionary 15 (7th ed. 1999) (noting that "[t]he word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation").

43.     Upon information and belief, the services, actions, and/or workmanship provided by the A-Z Lightning's employee and/or agent(s), installing the clamps on the roof were intentional, designed, expected, and/or foreseen.

44.     National Trust submits the intentional act of installing the lightning protection system was precisely what the A-Z Lightning employee and/or agent(s) set out to do and then in fact did do; it was not an accident.

45.     Given that an "occurrence" did not take place, a declaratory judgment should be granted denying A-Z Lightning and Chief Electric coverage under the Policy.

## B.  DENIAL OF PROPERTY DAMAGE COVERAGE BASED ON CONTRACTUAL LIABILITY EXCLUSION

46.     National Trust would incorporate the allegations contained in Paragraphs 1 through 45 as if recited verbatim herein.

47.     Alternatively, even if the Court were to find the intentional use of the clamps by the A-Z Lightning employee and/or agent(s) constituted an "occurrence," National Trust also contends that the services rendered by A-Z Lightning which are the subject of the underlying lawsuit referenced in Paragraph 26 fall within the contractual liability exclusion of the Policy, and therefore, no coverage exists.

48.     The Policy contains a specific exclusion for contractual liability, stating that "[b]odily injury" or "property damage" for which the insured is obligated to pay damage by reason of the assumption of liability in a contract or agreement is not subject to coverage:

### 2. Exclusions

This Insurance does not apply to:

10

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  The exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in a "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

49.     The allegations Chief Electric set forth in the underlying Complaint against A-Z referenced in Paragraph 26 pivots solely upon two counts of contractual liability.

50.     The Contract contained an indemnity provision in which A-Z Lightning assumed the tort liability of Chief Electric.

51.     This assumption of Chief Electric's tort liability by A-Z Lightning pertained to A-Z Lightning's business.

52.     Absent any contract or agreement, the negligence and/or any other tort liability of any A-Z Lightning employee or agent causing damage to the roof would have been imposed by law.

53.     All common law indemnity claims are rooted upon terms of the Contract which created the underlying obligations and privity between Chief Electric and A-Z Lightning.

54.     Given that the Policy specifically excludes "property damage" for which the insured was obligated to by reason of the assumption of liability in the Contract between Chief Electric and A-Z Lightning, a declaratory judgment should be granted denying A-Z Lightning and Chief Electric coverage under the Policy's contractual liability exclusion.

## C.  DENIAL OF PROPERTY DAMAGE COVERAGE BASED ON J(5) EXCLUSION

55.     National Trust would incorporate the allegations contained in Paragraphs 1 through 53 as if recited verbatim herein.

56.     Alternatively, if the Court were to find the clamps intentionally placed by the A-Z Lightning employee and/or agent(s) constituted an "occurrence" and that the contractual liability exclusion did not apply, National Trust contends the services rendered by A-Z Lightning which are the subject of the underlying lawsuits referenced in Paragraph 26 fall within the j(5) exclusion of the Policy, regarding "Damage to Property," and therefore no coverage exists.

57.     The j(5) exclusion applies to "ongoing operations" and excludes coverage for damage to specific property the insured has been hired to and is working on at the time the property damage occurs.

58.     "Work performed on that part of a building or land the insured was hired to work on, will constitute 'that part of real property on which the insured is performing operations.'" See 3-18 New Appleman on Insurance Law § 18.03 (2016 Library Ed.).

59.     Courts have explained the policy reasons for the j(5) exclusion as follows:

> "[T]he contractor . . . has a contractual business risk that he may be liable to the owner [of real property] resulting from failure to properly complete the building project itself in a manner so as to not cause damage to it.  This risk is one the general contractor effectively controls and one which the insurer does not assume because it has no effective control over those risks and cannot establish predictable and affordable insurance rates."

Std. Constr. Co. v. Md. Cas. Co., 359 F.3d 846, 853 (6th Cir. Tenn. 2004) (quoting Peter J. Neeson & Phillip J. Meyer, The Comprehensive General Liability Policy and Its Business Risk Exclusions: An Overview, 81-82, reprinted in Reference Handbook on the Comprehensive General Liability Policy (American Bar Ass'n 1995)).

60.     "The purpose of this exclusion is to bar coverage for damage to real property resulting from poorly performed work-- a risk that is in the insured's control."   3-18 New Appleman on Insurance Law § 18.03 (2016 Library Ed.).

61.     The Policy at issue contains the following j(5) exclusion, also known as a "business risk" or "operations" exclusion, and does not cover "property damage" to the particular part of real property in which the A-Z Lightning employees are contracted to work:

**j. Damage to Property** - "Property Damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arise out of those operations.

62.     Black's Law Dictionary defines "Real Property" as "land and anything growing on attached to, or erected on it, excluding anything that may be severed without injury to the land." Black's Law Dictionary (9th ed.) ('real property').

63.     The claim for damages at issue involves a roof on a building erected on land and is contained within the definition of real property.

64.     The damaged portion of the roof was the "particular part of real property" in which the A-Z Lightning employee was currently "performing operations."

65.     The damaged portion of the roof was likewise the "particular part of real property" in which A-Z Lightning was hired to work according to the terms of the Contract between A-Z Lightning and Chief Electric.

13

66.     The damage occurred while the installation of the lightning protection system was ongoing.

67.     The damage did not occur after the contracted work had been completed.

68.     Given that the Policy specifically excludes "property damage" to the particular part of real property in which the A-Z Lightning employee and/or agent(s) was instructed to work and was actively working, a declaratory judgment should be granted, denying A-Z Lightning coverage under the Policy based on the j(5) exclusion.

## D. DENIAL OF PROPERTY DAMAGE COVERAGE BASED ON J(6) EXCLUSION

69.     National Trust would incorporate the allegations contained in Paragraphs 1 through 68 as if recited verbatim herein.

70.     Alternatively, even if the Court were to find the clamps intentionally placed by the A-Z Lightning employee and/or agent(s) constituted an "occurrence," that the contractual liability exclusion did not apply, and that the j(5) exclusion was not applicable, National Trust contends that the services rendered by A-Z Lightning which are the subject of the underlying lawsuit referenced in Paragraph 26 fall within the j(6) exclusion of the Policy, regarding "Damage to Property," and therefore no coverage exists.

71.     The Policy provision at issue excludes coverage for any part of real property that must be repaired or replaced because A-Z Lightning's work was incorrectly performed on it.

72.     This is known as the "your work" policy exclusion and excludes coverage as follows:

> **j. Damage to Property** - "Property Damage" to:
>
> (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

73.     "Your work" is defined in the Policy as follows:

"Your work":

a. Means

(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.

b. "Your work" includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
(2) The providing of or failure to provide warnings or instructions.

74.     The "j(6)" or "your work" exclusion is designed to exclude correction of faulty workmanship of the work contracted for and applies to "any property" that must be restored, repaired, or replaced.  3-18 New Appleman on Insurance Law § 18.03 (2016 Library Ed.).

75.     The allegedly faulty workmanship of the A-Z Lightning employee was ongoing at the time the damage to the roof occurred.

76.     The A-Z Lightning employee and/or agent(s) was in the process of installing a lightning protection system pursuant to the Contract when the roof was damaged.

77.     The damage sustained to the roof as a result of the allegedly faulty craftsmanship and/or workmanship necessitated a full replacement of the roof in order for the roofing manufacturer's warranty to be applicable.

78.     The property damage caused by A-Z Lightning's allegedly faulty craftsmanship and/or workmanship occurred before the A-Z Lightning's initial installation of the lightning protection system was complete.

79.     Given that the Policy specifically excludes "property damage" to the particular part of any property that must be restored, repaired, or replaced because of A-Z Lightning's

15

uncompleted work that it was hired to perform, a declaratory judgment should be granted, denying A-Z Lightning coverage under the j(6) "your work" exclusion to the Policy.

## DENIAL OF ENDORSEMENT COVERAGE BASED ON ENDORSEMENT EXCLUSION (H)

80.     National Trust incorporates the allegations contained in Paragraphs 1 through 79 as if recited verbatim herein.

81.     Alternatively, even if the Court were to find the clamps intentional placed by the A-Z Lightning employee constituted an "occurrence"; that the contractual liability exclusion did not apply; and that neither the j(5) or j(6) exclusions were applicable, National Trust contends that the services rendered by A-Z Lightning which are the subject of the underlying lawsuits referenced in Paragraph 26, are also excluded from any endorsement coverage under the Policy.

82.     National Trust contends the A-Z Lightning employee and/or agent's incomplete installation and subsequent damage to the roof is not subject to any endorsement contained in the Policy based on endorsement exclusion (h).

83.     The Policy at issue contains the following endorsement, providing coverage for contractors' errors and/or omissions, and the relevant endorsement exclusion:

### COVERAGE G. CONTRACTORS ERRORS AND OMISSIONS

#### 1. Insuring Agreement

If you are a "contractor", we will pay those sums that you become legally obligated to pay as damages because of "property damage" to "your product", "your work" or "impaired property", due to faulty workmanship, material or design, or products including consequential loss, to which this insurance applies. The damages must have resulted from your negligent act, error or omission while acting in your business capacity as a contractor or subcontractor or from defect in material or a product sold or installed by you while acting in this capacity. The amount we will pay for damages is described in SECTION III LIMITS OF INSURANCE.

16

We have no duty to investigate or defend claims or "suits" covered by this Contractors Errors or Omissions coverage.

This coverage applies only if the "property damage" occurs in the "coverage territory" during the policy period.

This coverage does not apply to additional insureds, if any.

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

h. Any liability incurred or "property damage" which occurs, in whole or in part, before you have completed "your work."  "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract or work order has been completed;

(2) When all the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

(3) When that part of the work done at the job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work may need service or maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete.

84.    Endorsement exclusion (h) prevents endorsement coverage for "[a]ny liability incurred or 'property damage' which occurs, in whole or in part before [A-Z Lightning] completed" its work as set forth in the Contract.

85.    Upon information and belief, the A-Z Lightning employee and/or agent(s) ceased work on the Project prior the allegedly faulty initial installation being completed.

86.    After the damaged roof was replaced, A-Z Lightning continued work on the project and finished installing a second lightning protection system using an alternative method to attach the lightning arresters to the roof.

87.     Upon information and belief, A-Z Lightning's initial installation called for the Contract was never completed before the problem with the method of installation of the lightning arresters was discovered.

88.     Upon learning that the structural integrity of the roof was compromised and that the manufacturer's warranty would not be applicable, the roof was replaced prior to the completion of the initial installment.

89.     A-Z Lightning's second installation attempt was completed on or about May 26, 2016, after the damaged roof was replaced.

90.     Given that the Policy specifically excludes endorsement coverage if any liability incurs or "property damage" occurs, in whole or in part, before A-Z Lightning completed its work called for in the Contract, a declaratory judgment should be granted, denying A-Z Lightning coverage under endorsement exclusion (h) of the Policy.

91.     National Trust would incorporate the allegations contained in Paragraphs 1 through 90 as if recited verbatim herein.

92.     Upon information and belief, A-Z Lightning disputes National Trust's contention that A-Z Lightning is not entitled to coverage under the Policy in connection with the claims alleged in the underlying lawsuit referenced in Paragraph 26.

93.     As a result, an actual and justiciable controversy exists between the parties relating to the legal rights and duties of the parties under the Policy.

94.     National Trust therefore, is entitled to a judicial declaration that it is not obligated to provide coverage under the Policy to A-Z Lightning, Chief Electric, or any other contractor or subcontractor with respect to any claim arising out of A-Z Lightning's involvement in the claims

alleged the underlying lawsuit referenced in Paragraph 26 and/or any claims of the general contractor Accel/Pacific JV.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, National Trust prays:

1.     That process be issued and served upon A-Z Lightning and Chief Electric requiring them to answer this Complaint for Declaratory Judgment;

2.     That this Court declare that a real and immediate controversy exists among the parties;

3.     That this Court declare the rights, obligations, and legal relations of National Trust and A-Z Lightning and Chief Electric by reason of the aforesaid Policy;

4.     That this Court declare that the Policy does not provide coverage to A-Z Lightning or Chief Electric for the damages claimed by Chief Electric and/or Accel/Pacific JV;

5.     That this Court declare that National Trust is not obligated to furnish legal counsel or otherwise provide a defense to A-Z Lightning, Chief Electric, or any other party or potential party defendants in the underlying lawsuit referenced in Paragraph 26;

6.     That this Court declare that all costs associated with filing this action be awarded to National Trust; and

7.     That this Court award National Trust any other relief this Court deems just and equitable.

Respectfully submitted,

**LEWIS THOMASON**


By: _____s/*Stephen W. Vescovo*_____
STEPHEN W. VESCOVO (#7246)
LAURA L. DEAKINS (#30131)
2900 One Commerce Square
40 South Main St.
Memphis, TN  38103
(901) 525-8721

*Attorneys for Plaintiff, National Trust Insurance Co.*

6738786

20